Faye COHEN

v.

EMPLOYERS' LIABILITY ASSURANCE CORPORATION LIMITED OF LONDON, ENGLAND, an alien body corporate.

Mary C. HALLAM

v.

EMPLOYERS' LIABILITY ASSURANCE CORPORATION LIMITED OF LONDON, ENGLAND, an alien body corporate.

Civ. Nos. 12029, 12030.

United States District Court
D. Maryland.

Sept. 13, 1960.

Paul Berman and Bayard Z. Hochberg, Baltimore, Md., for plaintiffs.

Thomas G. Andrew and Rollins, Smalkin, Weston & Andrew, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Plaintiffs in these two cases seek to recover from defendant insurer the amount of judgments which they obtained against Sarah P. Cohen (the insured) for personal injuries sustained by them as a result of a collision between an automobile owned and operated by the insured, in which the plaintiffs were riding, and another automobile. The issues are: (1) Did the insured "voluntarily assume any obligation" in violation of Condition 5 of the policy issued to her by defendant insurer? (2) Did defendant insurer waive the alleged breach of condition?

### Facts

The insurance policy, covering the automobile involved in the accident, was issued to Sarah P. Cohen as the named insured, with $50,000/$100,000 bodily injury liability limits. It contains the following condition, inter alia:

"5. *Assistance and Cooperation of the Insured—Parts I and III.* The insured shall cooperate with the company and, upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

Plaintiffs are sisters of the insured, and on August 2, 1958, during the policy term, were passengers in her automobile, driven by her, leaving the Mondawmin Shopping Center, in Baltimore City. Instead of using a private roadway marked "Exit" from the Shopping Center into Gwynns Falls Parkway, the insured entered the Parkway through a private roadway marked "Entrance" and used as such. She failed to stop before entering the Parkway, which is a boulevard, and collided with an automobile being driven by Leroy Turner in a westerly direction. As a result of the collision, the insured and her passengers were seriously injured.

Several days after the accident Paul Berman, Esq., made claim on behalf of both plaintiffs against the insured and sent a copy of the letter to defendant insurer, which promptly investigated the accident. During September the insurer made the medical payments of $500 per person which were payable irrespective of fault. Officer Windham saw the insured in the hospital and told her that she was to blame for the accident. In October the insured asked one of defendant's investigators whether she could get something for her damages; he told her in effect that her policy did not cover her damages and that because she was guilty of negligence she had little chance

of collecting from the other driver. A lawyer nephew told her the same thing, as did her attorney, Solomon Liss, Esq., who represented her at the Traffic Court hearing, which had been postponed until April 7, 1959.

Meanwhile, defendant's local claim superintendent had been negotiating with Mr. Berman and, although he did not admit liability, he did not vigorously dispute it. Defendant's various representatives had agreed among themselves that it appeared to be a case of liability. On March 31, 1959, suit was filed in the Superior Court of Baltimore City on behalf of both plaintiffs against the insured, but she was not served with process until early in June.

About April 1 the insured called defendant's claim superintendent and asked whether he would furnish an attorney to represent her at the Traffic Court. He said "no", and she arranged to be represented by Mr. Liss. She was charged with reckless driving (Md.Code Ann. Art. 66½, sec. 209 (1957), failure to yield right of way when emerging from a private roadway (Art. 66½, sec. 234), and operating on an expired operator's license (Art. 66½, sec. 86(c) (1).

A transcript of the proceedings in the Traffic Court on April 7, taken by a public stenographer engaged by defendant insurer, reads in its entirety as follows:

"The Magistrate: What is the plea?

"Mr. Liss: Technical plea of not guilty, your Honor.

"Mr. Neilson: I represent the passenger.

"Mr. Liss: Might I say, your Honor, that there is absolutely no question of an accident in this case, at least so far as the legal form is concerned. It is the fault of Miss Cohen, however, she has been driving for thirty-seven years, she has never been involved in any accident and she has a perfectly clear record. She was very seriously injured in the accident, there were some passengers also injured and there is insurance and everybody is protected.

"The Magistrate: The operator's license is the A, B, C.

"Officer Windham: Yes.

"Mr. Liss: She has it.

"The Magistrate: I will dismiss that. How about the damages?

"Mr. Liss: She is insured and her insurance company has acknowledged its responsibility. It is a case of getting it straightened out.

"The Magistrate: I will put admits guilt so there is no question. You admit the civil liability, don't you?

"Mr. Liss: In other words, you understand that this accident was your fault, civilly?

"Miss Cohen: Yes.

"The Magistrate: Dismissed because of her good record."

The transcript was delivered to the insurer on April 21; its representatives did not know what had happened at the Traffic Court until that date. Meanwhile, on April 19, they had settled with Turner, the driver of the other car, for the full amount of his claim.

Immediately after receiving the transcript, defendant's local claim superintendent communicated with his regional supervisor in Philadelphia, who, in turn, communicated with defendant's principal American office, in Boston. It was decided to ask the opinion of counsel in Baltimore. This was furnished, was relayed to Boston, and word came down through the chain, reaching Baltimore on June 29, to disclaim liability. On July 2 defendant's claim superintendent wrote the insured disclaiming any further liability under the policy, and particularly disclaiming liability to defend or to pay any judgments obtained in the suits filed against the insured by her sisters. The letter continued: "The reasons for this disclaimer of liability are your violations of the conditions of this policy, including your failure to cooperate and your assumption of civil obligation." The suit

papers, which had been sent to the insurer on June 8, were returned with the suggestion that they be referred to the insured's personal attorney. The insured engaged Douglas N. Sharretts, Esq., to represent her.

The suits came on for trial before Judge Reuben Oppenheimer, sitting without a jury, on December 17–18, 1959. He found the liability of Sarah P. Cohen to be clear, and entered judgment in favor of Faye Cohen in the amount of $50,000 and in favor of Mary C. Hallam in the amount of $25,000. Defendant insurer was notified of these judgments and given an opportunity to appeal or ask for a new trial, but it refused to do so.

After a fi. fa. had been issued and returned nulla bona, plaintiffs filed the pending actions in this court against defendant insurer. Defendant's second amended answers set out the proceedings before the Traffic Court and alleged:

"3. That the said insured, Sarah P. Cohen, did thereby assume civil obligations and liability in violation of the following clause of said policy:

" 'The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for medical and surgical relief to others as shall be imperative at the time of the accident.'

"4. That the Defendant is not liable for said judgment, interest and costs under the terms and conditions of said policy."

The case came on for trial before the court without a jury. Evidence was offered by both sides and counsel were heard at length.

### Discussion

Defendant insurer contends that the insured, individually or through her attorney, "voluntarily * * * assumed an obligation" at the Traffic Court hearing, in violation of the specific provision in Condition 5, quoted in full above, that "The insured shall not, except at his own cost, voluntarily * * * assume any obligation * * *." It is noteworthy that the insurer does not contend that the insured violated the first sentence of Condition 5.

The specific provision upon which the insurer relies—that the insured shall not, except at his own expense, voluntarily assume any obligation—is a condition of the insurer's liability; the breach of that condition relieves the insurer from liability, without proof of prejudice to the insurer. American Automobile Ins. Co. v. Fid. & Cas. Co., 1930, 159 Md. 631, 637, 152 A. 523. See also Indemnity Ins. Co. of North Carolina v. Smith, 1951, 197 Md. 160, 164, 78 A.2d 461.

Plaintiffs contend: (1) that the insured did not assume any obligation, although she admitted that the accident was her fault; and (2) that such admission was not voluntary.

In the leading Maryland case, American Automobile Ins. Co. v. Fid. & Cas. Co., supra, the insured had not only admitted that he was at fault in the accident, but had agreed in writing to pay all expenses for repairs and loss of use of a particular damaged automobile. Cases in other states have dealt with various oral and written statements by an insured, either admitting a fact, such as drunkenness, or admitting that the accident was his fault, without more, or admitting liability generally. Various results have been reached, which cannot always be reconciled. Compare U-Drive-It Car Co. v. Friedman, La.App.1934, 153 So. 500, and Blake, for Use of McPherren v. Continental Cas. Co., 1934, 278 Ill.App. 232, in each of which the court distinguished between an admission of fault and an assumption of liability, with Kindervater v. Motorists Cas. Ins. Co., 1938, 120 N.J.L. 373, 199 A. 606, in which an admission of liability was treated as a voluntary assumption of liability. The reason for particular, specified conditions, as well as for the general condition of "cooperation", was well stated in the Kindervater case, 120 N.J.L. at page 375, 199 A. at page 608.

Any and all admissions by the insured or her attorney must be viewed in their

context. The first long statement by Mr. Liss at the Traffic Court, quoted above, contained the words: "It is the fault of Miss Cohen * * *." However, counsel for the insurer agrees that this statement by Mr. Liss probably referred to Miss Cohen's criminal liability—with which he was then properly concerned—and not with her civil liability. The assertion that Miss Cohen was insured had some relevance to the question whether her driving on an expired license was a serious or a trivial offense.[1] After learning that she had obtained her new license the magistrate dismissed that charge.

The magistrate himself then raised the question of damages and civil liability. Unfortunately, it is a matter of common knowledge, vouched for by counsel for both sides in this case, that this is a common practice in the Traffic Court and not an isolated instance. The civil rights and obligations of the parties—whether owners, operators, passengers, pedestrians or insurers—are not the legitimate concern of the Traffic Court. It is a criminal court, charged with the duty of protecting the public against unnecessary hazards on the highways by administering justice in a narrow but important branch of the criminal law. Of course, if a policeman did not see the alleged violation and the prosecuting witnesses do not wish to prosecute, the magistrate ordinarily need not inquire whether a civil settlement has contributed to their unwillingness. But it is not his function to assist any party to establish or resist a civil claim by obtaining admissions of fault, or otherwise.

In this case, the statement by Mr. Liss that the insurance company had acknowledged its responsibility was incorrect,

but was unintentionally incorrect. In any event, it was not an assumption of liability by the insured or by her attorney on her behalf. The following colloquy ensued:

"The Magistrate: I will put admits guilt so there is no question. You admit the civil liability, don't you?

"Mr. Liss: In other words, you understand that this accident was your fault, civilly?

"Miss Cohen: Yes.

"The Magistrate: Dismissed because of her good record."

It is not necessary to decide in this case whether an admission of fault, without more, should ordinarily be considered equivalent to an assumption of liability or of an obligation. Nor is it necessary to decide whether the admission in this case amounted to the assumption of an obligation, because it is clear, from a consideration of the whole record, including the testimony of Mr. Liss and Miss Cohen, before me in open court, that the insured did not *voluntarily* assume an obligation. What she said at the Traffic Court was said as a result of the ill-considered action of the magistrate, and there is no evidence in this case that the action of the magistrate was induced by the insured, by her attorney, or by the attorney for the passengers.

This decision also makes it unnecessary to decide: (a) whether the insurer's passive conduct—merely continuing in control of the defense of the claim for seventy-one days, without any affirmative action by the insurer or change of position by the insured—amounts to legally sufficient evidence of waiver,[2] and

---

1. The magistrate's reference to A, B, C was to the fact that the re-registration of Maryland operators was carried on alphabetically, so that the insured, whose name begins with C, was required to have a new license sooner than other operators whose initial letters begin further down the alphabet.

2. See Royal Ins. Co. v. Drury, 1926, 150 Md. 211, 132 A. 635, 45 A.L.R. 582;

Rokes v. Amazon Ins. Co., 1879, 51 Md. 512, 521; Columbia Casualty Co. v. Ingram, 1928, 154 Md. 360, 363–364, 140 A. 601; Triton Realty Co. v. Frieman, 1956, 210 Md. 252, 257, 123 A.2d 290; Bower & Kaufman v. Bothwell, 1927, 152 Md. 392, 396, 136 A. 892, 52 A.L.R. 158; Prudential Ins. Co. of America v. Brookman, 1934, 167 Md. 616, 620, 175 A. 838; Manufacturers Casualty Ins. Co. v.

(b) whether as a matter of fact to be decided by the judge, sitting as a jury, it amounts to a waiver.

Counsel will present judgment orders giving effect to this decision.